# EXHIBIT 1

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>St. Clair          COUNTY | SUMMONS | For Court Use Only |
|---|---|---|

**Instructions ▼**

Enter above the county name where the case was filed.

Amy Newton
_____
**Plaintiff / Petitioner** *(First, middle, last name)*

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/Respondents.

v.

Mission Care of Illinois, LLC
_____
**Defendant / Respondent** *(First, middle, last name)*

22LA0783
**Case Number**

Enter the Case Number given by the Circuit Clerk.

---

In **1**, if your lawsuit is for money, enter the amount of money you seek from the Defendant/Respondent.

1.  **Information about the lawsuit:**
    Amount claimed:  $ 50,000.00
    _____

In **2**, enter your contact information. If more than 1 person is bringing this lawsuit, attach an *Additional Plaintiff/Petitioner Contact Information* form.

2.  **Contact information for the Plaintiff/Petitioner:**
    Name *(First, Middle, Last):*  Brandon M. Wise, Attorney
    Street Address, Apt #:  818 Lafayette Ave., Floor 2
    City, State, ZIP:  St. Louis, MO 63104
    Telephone:  314-833-4825
    ☐ See attached for additional Plaintiff/Petitioner contact information

In **3**, enter the name of the person you are suing and their address. If more than 1 person is being sued, attach an *Additional Defendant/Respondent Contact Information* form.

3.  **Contact information for the Defendant/Respondent:**
    Name *(First, Middle, Last):*  Mission Care of Illinois, LLC: Serve - IL Corp Service Company
    Street Address, Apt #:  801 Adlai Stevenson Drive
    City, State, ZIP:  Springfield, IL 62703
    Telephone:
    ☐ See attached for additional Defendant/Respondent contact information

---

**Important Information for the person receiving this form:**

You have been sued.

Follow the instructions on the next page on how to appear/answer.

- If you do not appear/answer the court may decide the case without hearing from you and enter a judgment against you for what the plaintiff/petitioner is asking.
- Your written appearance/answer must be filed on time and in the proper form.
- Forms for a written appearance/answer are available here:
  http://www.illinoiscourts.gov/forms/approved/default.asp

If you cannot afford to pay the fee for filing your appearance/answer, ask the circuit clerk for an *application for waiver of court fees.*

You should read all of the documents attached.

SEP 2 0 2022

Enter the Case Number given by the Circuit Clerk: 22LA0783

| In 4, the Circuit Clerk will give you the court date or appearance date, check any boxes that apply, and include the address of the court building and room where the Defendant/ Respondent must file their response. | **4.** | **Instructions for person receiving this form (Defendant/Respondent):** |
|---|---|---|

To respond to this *Summons* you must:

☐ Go to court:

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: _____ Court Room: _____

City, State, ZIP: _____

☐ File a written *Appearance* and *Answer/Response* with the court:

On or before this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: _____

City, State, ZIP: _____

☑ File a written *Appearance* and *Answer/Response* with the court within 30 days from the day you receive this *Summons* (listed below as the "Date of Service").

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: St. Clair County Courthouse, 10 Public Square

City, State, ZIP: Belleville, IL 62220

| **STOP!** The Circuit Clerk will fill in this section. | Witness this Date: _____9/14/2022_____ | *Seal of Court* |
|---|---|---|

Nora Sternau

Clerk of the Court: _____

MARIE ZAIZ, Circuit Clerk

| **STOP!** The officer or process server will fill in the Date of Service. | This *Summons* must be served within 30 days of its date, listed above. |
|---|---|

Date of Service: **SEP 2 0 2022** _____

*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant/Respondent or other person.)*

| **Plaintiff/Petitioner:** | To serve this *Summons*, you must hire the sheriff (or a private process server outside of Cook County) to deliver it and your Complaint/Petition to the Defendant/Respondent. If the sheriff (or private process server outside of Cook County) tries but can't serve the *Summons*, fill out another summons and repeat this process. |
|---|---|

| **Attention:** | E-Filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp, or talk with your local circuit clerk's office. |
|---|---|

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>St. Clair_____ COUNTY | AFFIDAVIT OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | Amy Newton<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the name of the person you are suing as Defendant/Respondent. | v. | |
| Enter the Case Number given by the Circuit Clerk. | Mission Care of Illinois, LLC<br>**Defendant / Respondent** *(First, middle, last name)* | 22LA0783<br>**Case Number** |

**\*\*Stop. Do not complete the form. The sheriff will fill in the form.\*\***

> **DO NOT** complete this section. The sheriff will complete it.

My name is _____ and I swear under oath
*First, Middle, Last*

that I served the *Summons* and Complaint/Petition on the Defendant/Respondent

_____ as follows:
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:
Male: ☐    Female: ☐    Approx. Age: _____ Hair Color: _____
Height: _____ Weight: _____
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____

☐ At the Defendant/Respondent's home:
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____
And left it with: _____
*First, Middle, Last*
Male: ☐    Female: ☐    Approx. Age: _____
and by sending a copy to this defendant in a postage-paid, sealed envelope to the
above address on _____ , 20 _____ .

☐ On the Corporation's agent, _____
*First, Middle, Last*
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk: 22LA0783

| DO NOT complete this section. The sheriff, or private process server will complete it. | **By:** |
|---|---|

_____
*Signature*

_____
*Print Name*

**FEES**

| By certified/registered | $ _____ |
|---|---|
| Service and Return | $ _____ |
| Miles: _____ | $ _____ |
| Total    $ _____ | |

Electronically Filed
Marie Zaiz
Circuit Clerk
Jennifer Davlin
22LA0783
St. Clair County
9/8/2022 5:07 PM
19418492

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
COUNTY OF ST. CLAIR, STATE OF ILLINOIS**

AMY NEWTON,                                              )
INDIVIDUALLY AND ON BEHALF OF                            )
ALL OTHERS SIMILARLY SITUATED,                          )
                                                        )
    *Plaintiff,*                     )
                                                        )
v.                                                       )   Case No.:  **22LA0783**
                                                        )
MISSION CARE OF ILLINOIS, LLC,                          )
                                                        )
    *Defendant.*                     )

### CLASS ACTION COMPLAINT

Plaintiff Amy Newton (hereinafter "Plaintiff" or "Newton"), brings this Class Action Complaint individually and on behalf of all others similarly situated against Defendant Mission Care of Illinois, LLC (hereinafter "Defendant") to stop Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's and the proposed Class's sensitive, private, and personal biometric data. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by her attorneys. Further, Plaintiff alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff worked for Defendant Mission Care of Illinois, LLC at its location in Illinois. While doing so, Plaintiff was a citizen of Illinois.

2.    Defendant Mission Care of Illinois, LLC is an Illinois corporation with places of business in Illinois.

3.    Defendant Mission Care of Illinois, LLC may be served through its registered agent, Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

4.    Jurisdiction is proper in this Court as Plaintiff is a citizen of Illinois and Defendant is an Illinois corporation that does business in Illinois.

1

5.      Defendant Mission Care of Illinois, LLC also does business as Abbott EMS of Illinois and Abbott EMS.

6.      Venue is proper in this court pursuant to 735 ILCS 5/2-101 as, upon information, Defendant does business in this County.

## INTRODUCTION

7.      While most establishments and employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Defendant, upon information and belief, mandated and required that employees have finger(s) scanned by a biometric timekeeping device.

8.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – biometrics are unique, permanent biometric identifiers associated with each employee.

9.      This exposes Defendant's employees, including Plaintiff, to serious and irreversible privacy risks.

10.     For example, if a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax, Uber, Facebook/Cambridge Analytica, and Marriott data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this highly personal and private information.

11.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

12.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data -- including fingerprints, iris scans, and a facial photograph -- of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity*

2

*Theft*, The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

13. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-haveaccessto-billion-aadhaar-details/523361.html.

14. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics.

15. As an employee/worker of Defendant, Plaintiff was required to "clock in" and "clock out" of work shifts by having her fingerprint scanned by a biometric timeclock which identified each employee, including Plaintiff.

16. Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards employees' statutorily protected privacy rights and unlawfully collects, stores, and uses employees' biometric data in violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it did not and, upon information and belief, continues not to:

    a. Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprint(s) were being collected, stored, disseminated and used, as required by BIPA;

    b. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprint(s), as required by BIPA;

    c. Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their fingerprint(s), as required by BIPA; and

17. The State of Illinois takes the privacy of biometric data seriously.

3

18.    There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand, which makes the protection of, and control over, biometric identifiers and biometric information particularly important.

19.    Upon information and belief, Plaintiff and the Class members may be aggrieved because Defendant may have improperly disclosed employees' biometrics to third-party vendors in violation of BIPA.

20.    Plaintiff and the putative Class are aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of employees' last interactions with the company.

### ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION

21.    BIPA provides valuable privacy rights, protections, and benefits to employees in Illinois.

22.    Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then- growing yet unregulated technology. See 740 ILCS 14/5.

23.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the

4

company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now- bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

24.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. See Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

25.    Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

26.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.  Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b.   Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.  Receives a written release executed by the subject of the biometric identifier or biometric information."

See 740 ILCS 14/15(b).

27.    BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

28.    Biometric identifiers include fingerprints, retina and iris scans, voiceprints, and scans of hand and face geometry. See 740 ILCS 14/10. Biometric information is separately defined to

include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

29.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. See, e.g., 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See*, 740 ILCS 14/15(d)(1).

30.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

31.    The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

32.    BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

6

33.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

### PLAINTIFF SPECIFIC ALLEGATIONS

34.     Plaintiff was required to "clock-in" and "clock-out" using a timeclock that operated, at least in part, by scanning Plaintiff's fingerprint.

35.     As an employee, Plaintiff was required to scan at least one finger, multiple times, so Defendant could create, collect, capture, construct, store, use, and/or obtain a biometric template for Plaintiff.

36.     Defendant then used Plaintiff's biometrics as an identification and authentication method to track her time, potentially with the help of a third-party vendor.

37.     Defendant subsequently stored Plaintiff's biometric data in its database(s).

38.     Each time Plaintiff began and ended her workday, in addition to clocking in and out for lunches, she was required to scan her fingerprint using the biometric timeclock device.

39.     Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, or used her biometrics.

40.     Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Defendant will ever permanently delete her biometrics.

41.     Plaintiff has never been provided with nor ever signed a written release allowing Defendant to collect, capture, store, or otherwise obtain her fingerprint(s), handprint, hand geometry, or other biometrics.

42.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

7

43.    BIPA protects employees like Plaintiff and the putative Class from this precise
conduct, and Defendant had no right to secure this data.

44.    Through BIPA, the Illinois legislature has created a right – a right to receive certain
information prior to an employer securing their highly personal, private and proprietary biometric data
– and an injury – not receiving this extremely critical information.

45.    Pursuant to 740 ILCS 14/15(b), Plaintiff and the putative Class were entitled to receive
certain information prior to Defendant securing their biometric data; namely, information advising
them of the specific limited purpose(s) and length of time for which it/they collect(s), store(s), and
use(s) their fingerprint(s) and any biometrics derived therefrom; information regarding Defendant's
biometric retention policy; and, a written release allowing Defendant to collect and store their private
biometric data.

46.    No amount of time or money can compensate Plaintiff if her biometric data is
compromised by the lax procedures through which Defendant captured, stored, used, and
disseminated Plaintiff's and other similarly-situated individuals' biometrics, and Plaintiff would not
have provided her biometric data to any Defendant if she had known that they would retain such
information for an indefinite period of time without her consent.

47.    A showing of actual damages beyond a violation of the BIPA statute is not necessary
in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40
("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her
rights under the Act, in order to qualify as "aggrieved" person and be entitled to seek liquidated
damages and injunctive relief pursuant to the Act").

48.    As Plaintiff is not required to allege or prove actual damages beyond a violation of
Plaintiff's statutory rights in order to state a claim under BIPA, she seeks statutory damages under
BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

8

## DEFENDANT'S BIOMETRIC FINGER-SCANNING OF EMPLOYEES

49.    By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data as an authentication method stopped doing so.

50.    However, Defendant failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, Defendant continues to collect, store, use, and disseminate employees' biometric data in violation of BIPA.

51.    At relevant times, Defendant has taken the rather invasive and coercive step of requiring employees to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom, to identify the employee and track employee work time.

52.    After an employee's finger scans are captured, collected, and/or recorded by Defendant, employees are subsequently required to scan their finger into one of Defendant's biometric time clocks when they clock in or out at work.

53.    Defendant captured, collected, stored, and/or otherwise obtained the employee's biometrics in order to identify and verify the authenticity of the employee who is clocking in or out.

54.    Moreover, Defendant caused these biometrics to be associated with employees, along with other employee personal and work information.

55.    Defendant has a practice of using biometric time clocks to track its employees, albeit without regard to Illinois' requirements under BIPA.

56.    As part of the employee time-clocking process, Defendant caused biometrics from employee finger scans to be recorded, collected, captured, and stored at relevant times.

57.    Defendant has not, on information and belief, properly informed employees in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored;

9

informed employees in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; obtained employees' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it; or obtained employees' executed written release as a condition of employment.

58.    When Plaintiff arrived for work, and when Plaintiff left or clocked in or out of work, at relevant times during her employment, Defendant required Plaintiff to submit Plaintiff's finger scan to the biometric timekeeping system.

59.    The system captured, collected, stored, and/or otherwise obtained Plaintiff's biometrics.

60.    Defendant further required Plaintiff to scan Plaintiff's finger(s) in order to use the biometric system, so that the timekeeping system captured, collected, stored, and/or otherwise obtained Plaintiff's finger scan, matched Plaintiff's finger scan biometrics, and associated Plaintiff's biometrics with Plaintiff's identity.

61.    Defendant did not at any time, on information and belief: inform Plaintiff in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiff's executed written release to have Plaintiff's biometrics captured, collected, stored, or recorded as a condition of employment -- Plaintiff did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiff's fingerprint, finger scan, finger geometry, or associated biometrics. Nor did Plaintiff know or fully understand that Defendant was collecting, capturing, and/or storing biometrics when Plaintiff was scanning Plaintiff's finger; nor did

10

Plaintiff know or could Plaintiff know all of the uses or purposes for which Plaintiff's biometrics were taken.

62.     Upon information and belief, Defendant has not publicly disclosed its retention schedule and guidelines for permanently destroying employee biometrics, if they exist.

63.     Defendant, on information and belief, has no written policy, made available to the public, that discloses its retention schedule and/or guidelines for retaining and then permanently destroying biometric identifiers and information.

64.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendant's – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

65.     That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a finger scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

66.     Thus, BIPA is the Illinois Legislatures expression that Illinois citizens have biometric privacy rights, as created by BIPA.

67.     Defendant disregarded these obligations and instead unlawfully collected, stored, and used employees' biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

68.     Because Defendant neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, Defendant's employees have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates his or her biometric data.

11

69.     Nor are Plaintiff and the putative Class told whom Defendant currently discloses his or her biometric data, or what might happen to his or her biometric data in the event of a buyout, merger, or a bankruptcy.

70.     By and through the actions detailed above, Defendant has not only disregard the Class' privacy rights, but it has also violated BIPA.

71.     Defendant's above-described use of biometrics benefits only Defendant. There is no corresponding benefit to employees: Defendant has required or coerced employees to comply in order to receive a paycheck, after they have been committed to the job.

CLASS ALLEGATIONS

72.     Plaintiff brings this action on behalf of herself and pursuant to 735 ILCS 5/2-801 on behalf of a class (hereinafter the "Class") defined as follows:

> All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois during the applicable statutory period.

Excluded from the class are Defendant's officers and directors, Plaintiff's counsel, and any member of the judiciary presiding over this action.

73.     **Numerosity:** The exact number of class members is unknown and is not available to Plaintiff at this time, but upon information and belief, there are in excess of forty potential class members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendant's records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendant against current employees who are currently having their BIPA rights violated.

74.     **Common Questions:** There are several questions of law and fact common to the claims of Plaintiff and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

12

a. whether Defendant has a practice of capturing or collecting employees' biometrics;

b. whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

c. whether Defendant obtained an executed written release from finger scanned employees before capturing, collecting, or otherwise obtaining employee biometrics;

d. whether Defendant obtained an executed written release from finger scanned employees, as a condition of employment, before capturing, collecting, converting, sharing, storing or using employee biometrics;

e. whether Defendant provided a writing disclosing to employees the specific purposes for which the biometrics are being collected, stored, and used;

f. whether Defendant provided a writing disclosing to finger scanned employees the length of time for which the biometrics are being collected, stored, and used;

g. whether Defendant's conduct violates BIPA;

h. whether Defendant's conduct was negligent, reckless, or willful;

i. whether Plaintiff and Class members are entitled to damages, and what is the proper measure of damages;

75.    **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interest of the class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiff.

76.    **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because of the fear and likelihood of retaliation by Defendant against current employees bringing a civil action as an individual. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions

13

would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

### COUNT I – FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/15(a) – FAILURE TO INSTITUTE, MAINTAIN, AND ADHERE TO PUBLICLY AVAILABLE RETENTION SCHEDULE

77.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.    BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. See 740 ILCS 14/15(a).

79.    Defendant fails to comply with these BIPA mandates.

80.    Defendant is an Illinois corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

81.    Plaintiff is an individual who had her "biometric identifiers" collected by each Defendant, as explained in detail in above. See 740 ILCS 14/10.

82.    Plaintiff's biometric identifiers were used to identify Plaintiff and, therefore, constitute "biometric information" as defined by BIPA. See 740 ILCS 14/10.

83.    Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. See 740 ILCS 14/15(a).

14

84.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

85.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### COUNT II – FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/15(b) – FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION

86.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject...in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject...in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information..." 740 ILCS 14/15(b) (emphasis added).

88.     Defendant fails to comply with these BIPA mandates.

15

89.     Defendant is an Illinois corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

90.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendants, as explained in detail above. *See* 740 ILCS 14/10.

91.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

92.     Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

93.     Defendant never informed Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

94.     By collecting, storing, using and disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

95.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS

16

14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740

ILCS 14/20(3).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class of similarly situated individuals,

prays for an Order as follows:

A.   Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the Class as defined herein;

B.   Designating and appointing Plaintiff as representative of the Class and Plaintiff's undersigned counsel as Class Counsel;

C.   Declaring that Defendant's actions, as set forth above, violate BIPA;

D.   Awarding Plaintiff and the Class members statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2); statutory damages of $1,000 per *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

E.   Declaring that Defendant's actions, as set forth above, were intentional or reckless;

F.   Declaring that Defendant's actions, as set forth above, were negligent;

G.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

H.   Awarding Plaintiff and the Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 740 ILCS 14/20(3);

I.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

J.   Granting all such other and further relief as the Court deems just and appropriate.

Dated: September 8, 2022

Respectfully Submitted:

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806

Adam Florek – IL Bar # 6320615
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@peifferwolf.com
Email: plesko@peifferwolf.com
Email: aflorek@peifferwolf.com

COUNSEL FOR THE PLAINTIFF AND THE PUTATIVE CLASS

Electronically Filed
Marie Zaiz
Circuit Clerk
Michelle Foster
22LA0783
St. Clair County
9/14/2022 1:36 PM
19490069

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## COUNTY OF ST. CLAIR, STATE OF ILLINOIS

AMY NEWTON,                                      )
INDIVIDUALLY AND ON BEHALF OF                    )
ALL OTHERS SIMILARLY SITUATED,                   )
                                                 )
        *Plaintiff*,                             )
                                                 )
v.                                               )        Case No.: 22LA0783
                                                 )
MISSION CARE OF ILLINOIS, LLC,                   )        Judge:
                                                 )
        *Defendant*.                             )

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

In this case, Plaintiff Amy Newton ("Plaintiff") alleges that Defendant Mission Care of Illinois, LLC ("Defendant") systematically violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* This case is well suited for class certification pursuant to 735 ILCS 5/2-801. Specifically, Plaintiff seeks to certify a class consisting of several hundred or more individuals who had their biometrics collected, captured, and/or stored by Defendant in the State of Illinois during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiff's claims and the claims of similarly-situated individuals all arise from Defendant's uniform policies and practices, they satisfy the requirement of 735 ILCS 5/2-801 and should be certified. Notably, to Plaintiff's Counsels' knowledge, the only BIPA class certification decisions issued to date have granted class certification. See, *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018) (granting class certification) *aff'd Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019); and Ex. A, Mem. and Order, *Roberson v. Symphony Post Acute Care Network, et al.*, 17-L-733 (St. Clair County) (same).

Plaintiff moves for class certification to protect members of the proposed class, individuals whose proprietary and legally protected personal and private biometric data was invaded by Defendant. Plaintiff believes that the evidence and argumentation submitted with this motion are sufficient to allow the class to be certified now. However, in the event the Court (or Defendant) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiff requests that the Court allow Plaintiff to supplement her briefing and defer the response and reply deadlines.

## I.     RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1) Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

2

(3) Receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

Although there may be benefits with using biometrics, there are also serious risks. Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – biometrics, including fingerprints, are unique, permanent biometric identifiers associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has *no* means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Equifax and Uber data breaches – individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

## B. <u>Factual Allegations</u>

Plaintiff filed this class action against Defendant on September 8, 2022, to redress Defendant's unlawful collection, use, storage, and disclosure of biometric information of Illinois citizens under BIPA. In his Class Action Complaint, Plaintiff provided allegations that Defendant has and continues to violate BIPA through the collection of fingerprint-based biometrics without: (1) informing individuals in writing of the purpose and length of time for which fingerprint(s) were being collected, stored and used; (2) providing a publicly available retention schedule or guidelines for permanent destruction of the data; and (3) obtaining a written release, as required by BIPA. *See* Complaint ("Compl.") at ¶¶ 6-8, 32-42, 48-62, 76-103.

3

Accordingly, Defendant's practices violated BIPA. As a result of Defendant's violations, Plaintiff and similarly-situated individuals were subject to Defendant's uniform policies and practices and were victims of its scheme to unlawfully collect, store, and use individuals' biometric data in direct violation of BIPA.

Plaintiff now seeks class certification for the following similarly-situated individuals, defined as:

> All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois during the applicable statutory period.

*Id.* at ¶ 72.

Given Defendant's standard practices defined above and the straightforward and common legal questions presented in this case, Plaintiff now moves for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before the Defendant has responded. For the reasons discussed herein, Plaintiff's request should be granted.

## II.     STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

> (1) the class is so numerous that a joinder of all members is impracticable;
>
> (2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;

4

(3) the representative parties will fairly and adequately protect the interest of the class; and

(4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

## III.    ARGUMENT

Plaintiff's claims here are especially suited for class certification because Defendant treated all class members identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, and use of their biometric data by Defendant throughout the class period. Plaintiff meets each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

### A.    The Class Is So Numerous That Joinder of All Members Is Impracticable.

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, nonspeculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the

5

class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

In the present case, there can be no serious dispute that Plaintiff meets the numerosity requirement. The class of potential plaintiffs is sufficiently large to make joinder impracticable. As result of Defendant's violations of BIPA, Plaintiff and all similar-situated individuals were subject to Defendant's uniform policies and practices and were victims of Defendant's schemes to unlawfully collect, store and use their extremely personal and private biometric data in direct violation of BIPA. The precise number in the class cannot be determined until discovery records are obtained from Defendant. Nevertheless, class membership can be easily determined by reviewing Defendant's records. A review of Defendant's files regarding the collection, storage and use of biometric data performed during the class period is all that is needed to determine membership in Plaintiff's proposed classes. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendants' objection that "the proposed class was not ascertainable, because the process of reviewing defendants' transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012)[1] (rejecting the argument that manual review of files should defeat certification agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses

---

[1]    "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

or the manner in which their business records were maintained," and citing numerous courts that
are in agreement, including *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz.
Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who
is eligible for the [denied] discount, that work can be done through discovery"). Once Defendant's
records are obtained, the Court will know the precise number of persons affected.

     Absent certification of this class action, putative class members may never know that their
legal rights have been violated and as a result may never obtain the redress to which they are
entitled under BIPA. Illinois courts have noted that denial of class certification where members of
the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of
justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198
Ill.App.3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from
harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use,
safeguarding, handling, storage, retention, and destruction of biometric identifiers and
information. A class action would help ensure that Plaintiff and all other similarly-situated
individuals have a means of redress against Defendant for its widespread violations of BIPA.

    **B.**    **Common Questions Of Law And Fact Exist That Predominate Over Any
Questions Solely Affecting Individual Members Of The Class.**

    Courts analyze commonality and predominance under Section 2-801 by identifying the
substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*,
407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then
becomes whether those issues will predominate and whether they are common to the class,
meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of
recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals,

the question is will "common . . . issues be the subject of the majority of the efforts of the litigants
and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is the culpable conduct of the Defendant under BIPA. The
issues are simple and straightforward legal questions that plainly lend themselves to class-wide
resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendant
disregarded Plaintiff's and other similarly-situated individuals' statutorily-protected privacy rights
and unlawfully collected, stored, and used their biometric data in direct violation of BIPA.
Specifically, Defendant has violated BIPA because it failed to: (1) inform Plaintiff or the putative
class in writing of the specific purpose and length of time for which their biometrics were being
collected, stored, and used, as required by BIPA; (2) provide a publicly available retention
schedule and guidelines for permanently destroying Plaintiff's and the putative class's biometrics,
as required by BIPA; and (3) receive a written release from Plaintiff or the putative class to collect,
capture, or otherwise obtain their biometrics, as required by BIPA. Defendant treated the entire
proposed class in precisely the same manner, resulting in identical violations of BIPA. These
common biometric-collection practices create common issues of law and fact. In fact, the legality
of Defendant's collection, storage, and use of biometric data is the focus of this litigation.

Indeed, once this Court determines whether Defendant's practice of collecting, storing, and
using individuals' biometric data without adhering to the specific requirements of BIPA constitutes
violations thereof, liability for the claims of class members will be determined in one stroke. The
material facts and issues of law are substantially the same for the members of the class, and
therefore these common issues could be tried such that proof as to one claimant would be proof as
to all members of the class. This alone establishes predominance. The only remaining questions
will be whether Defendant's violations caused members of the class to suffer damages and the

proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. Accordingly, a favorable adjudication of the Plaintiff's claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

### C.    The Named Plaintiff and Class Counsel Are Adequate Representatives of The Class.

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiff's interest arises from statute. The class representative, Amy Newton, is a member of the proposed class and will fairly and adequately protect the class's interests. Plaintiff was required to scan her fingerprint to enable Defendant to use it as an authentication method to track her time. Defendant subsequently stored Plaintiff's biometrics in its database(s). Each time Plaintiff began and ended her workday, he was required to scan her finger. Plaintiff has never been informed of the specific limited purposes (if any) of length of time for which Defendant collected, stored, or used her fingerprints. Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Defendant will ever permanently delete any stored biometrics. Finally, Plaintiff has never been provided nor did she ever sign a written release allowing Defendant to collect, store, or use her biometrics. Thus, Plaintiff was a victim of the same uniform policies and practices of Defendant as the individuals she seeks to represent and is not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiff has the interests of those class members in mind, as demonstrated by her willingness to sue on a class-wide basis and step forward as the class representative, which subjects Plaintiff to discovery. This qualifies

Plaintiff as a conscientious representative plaintiff and satisfies the adequacy of representation requirement.

Proposed Class Counsel, Peiffer Wolf Carr Kane Conway & Wise, APLC ("Peiffer Wolf"), will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit B – Peiffer Wolf Firm Resume). Peiffer Wolf attorneys, are recognized attorneys in class action lawsuits and have been designated as class counsel in numerous class actions in state and federal courts. (*Id.*). Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

### D.    A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corporation*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

Here, Plaintiff's claim stems from Defendant's common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens of additional individual cases raising identical questions of liability. Moreover, class members are better served

10

by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App.
(1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting
arguments that individual lawsuits would be superior). In the interests of justice and judicial
efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum.
For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims
in this case.

      E.      **In The Event The Court Or Defendant Seeks More Factual Information
              Regarding This Motion, The Court Should Allow Supplemental And
              Deferred Briefing Following Discovery.**

      There is no meaningful need for discovery for the Court to certify a class in this matter;
Defendant's practices and policies are uniform. If, however, the Court wishes for the Parties to
engage in discovery, the Court should keep the instant motion pending during the discovery period,
allow Plaintiff a supplemental brief, and defer Defendant's response and Plaintiff's reply. Plaintiff
is moving as early as possible for class certification in part to avoid the "buy-off problem," which
occurs when a defendant seeks to settle with a class representative on individual terms in an effort
to moot the class claims asserted by the class representative. Plaintiff is also moving for class
certification now because the class should be certified, and because no meaningful discovery is
necessary to establish that fact. The instant motion is far more than a placeholder or barebones
memorandum. Rather, Plaintiff's full arguments are set forth based on the facts known at this
extremely early stage of litigation. Should the Court wish for more detailed factual information,
the briefing schedule should be extended.

### IV.    Conclusion

      For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order:
(1) certifying Plaintiff's claims as a class action; (2) appointing Plaintiff as Class Representative;
(3) appointing Peiffer Wolf Carr Kane Conway & Wise, LLP as Class Counsel; and (4) authorizing

court-facilitated notice of this class action to the class. In the alternative, this Court should allow

discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.


Date:   September 14, 2022                          Respectfully Submitted,

                                                   By: /s/ Brandon M. Wise
                                                   Brandon M. Wise – IL Bar # 6319580
                                                   Paul A. Lesko – IL Bar # 6288806
                                                   Adam Florek – IL Bar # 6320615
                                                   **PEIFFER WOLF CARR
                                                   KANE CONWAY & WISE, LLP**
                                                   818 Lafayette Ave., Floor 2
                                                   St. Louis, MO 63104
                                                   Ph: 314-833-4825
                                                   Email: bwise@peifferwolf.com
                                                   Email: plesko@peifferwolf.com
                                                   Email: aflorek@peifferwolf.com



### CERTIFICATE OF SERVICE

        I hereby certify that on this date, I filed the foregoing document with the clerk of the Court
using the Illinois E-Filing System, which should further distribute a true and accurate copy of the
foregoing to all counsel of record.


                                                   /s/ Brandon M. Wise

# EXHIBIT A

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

SAROYA ROBERSON, individually and on        )
behalf of all others similarly situated,    )
                                            )
Plaintiff,                                  )
                                            )   Case No. 17 -L- 733
v.                                          )
                                            )
SYMPHONY POST ACUTE CARE                    )
NETWORK; SYMPHONY SYCAMORE                  )
LLC; SYMPHONY HEALTHCARE LLC;               )
SYMPHONY M.L. LLC; SYMPHONY                 )
MONARCH HOLDINGS, LLC; and DOE              )
DEFENDANTS 1-100,                           )
                                            )
Defendants.                                 )

FILED
ST. CLAIR COUNTY

MAR 1 2 2019

35              CIRCUIT CLERK

## MEMORANDUM AND ORDER
## ON CLASS CERTIFICATION

The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion").

The issues have been briefed and argued by the parties.[1]  The Court hereby **ORDERS**:

### I.    NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.

Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois.  Plaintiff alleges

that as part of timekeeping while she worked at this location, Defendants and others captured

her biometric information or biometric identifiers (a palm scan) within the meaning of the

Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA").  Defendants' opposition brief

does not dispute Roberson's biometric information or biometric identifiers were so captured.

BIPA manifests the Illinois General Assembly's findings that:

---

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing,
but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony
Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the
undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is
ready to proceed without the need for additional hearing.

1

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id*. at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id*. at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers

or biometric information, including:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

2

Plaintiff alleges none of these requirements were met when capturing her biometric

information. Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20.  Right of action.  Any person aggrieved by a violation of this Act
> shall have a right of action in a State circuit court . . . against an offending
> party.  A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act,
> liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this
> Act, liquidated damages of $5,000 or actual damages, whichever is
> greater; . . . .

740 ILCS 14/20 (2018).  Plaintiff brought this action pursuant to these and other provisions of

BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were

captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network").

She seeks to certify a class of Illinois citizens who had their biometric information or biometric

identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated

subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased,
> received through trade, or otherwise obtained in Illinois at any location associated with
> the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set
> forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and
> affiliates of any person or business associated with the Symphony Post Acute Care
> Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court
> presiding over this action.

## II.      LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.

"In determining whether to certify a proposed class, the trial court . . . should avoid

3

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.,* 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.,* 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

**III. FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).**

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

4

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

## IV.   SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where – as here – the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

5

may be shown where the claims of the individual class members are based upon the common
application of a statute or where the proposed class members are aggrieved by the same or
similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2] Defendants'
opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily
satisfied in this case. All class members are citizens of Illinois. All are proceeding principally
under a single Illinois statute, BIPA. Each was subjected to an identical course of conduct by
defendants: The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states
will predominate:

a.  Whether the Defendants captured, collected, stored or used the
    biometric information of the Plaintiff and the Class?

b.  If the Defendants captured, collected, stored or used the biometric
    information of the Plaintiff and the Class, did the Defendants inform the
    Plaintiff and the Class in writing that a biometric identifier or biometric
    information was being collected or stored?

c.  If the Defendants captured, collected, stored or used the biometric
    information of the Plaintiff and the Class, did the Defendants inform the
    Plaintiff and the Class in writing of the specific purpose and length of
    term for which a biometric identifier or biometric information was being
    collected, stored, and used?

d.  If the Defendants captured, collected, stored or used the biometric
    information of the Plaintiff and the Class, did the Defendants receive a
    written release executed by the Plaintiff and the Class of the biometric
    identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra*, the Court also does not
consider which class members will ultimately prevail. "That some members of the class are not entitled to relief
because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill.
App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

authorized representative?

e.     If the Defendants captured, collected, stored or used the biometric
        information of the Plaintiff and the Class, did the Defendants develop a
        written policy, made available to the public, establishing a retention
        schedule and guidelines for permanently destroying biometric identifiers
        and biometric information when the initial purpose for collecting or
        obtaining such identifiers or information has been satisfied or within 3
        years of the individual's last interaction with the private entity, whichever
        occurs first?

f.      Whether Defendants' violations of BIPA were negligent, or instead,
        intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single

statutory scheme – is the central question in this case. This same question will predominate for

each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants

assert that "'The purpose of the predominance requirement is to ensure that the proposed

class is sufficiently cohesive to warrant adjudication by representation . . .' Smith v. Illinois Cent.

R.R. Co., 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance

requirement, a plaintiff must show that "successful adjudication of the class representative's

individual claim 'will establish a right of recovery in other class members' such that 'all that

should remain is for other class members to file proof of their claim., Id. (quotation omitted);

see also Mashal v. City of Chicago, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and

predominance in this case:

a.     whether a class member used the same type of "finger or hand print
        reader/scanner" that Roberson used,

7

b.    whether a class member has suffered a sufficient injury to invoke BIPA's private right of action,

c.    whether a class member has suffered actual injury such that actual damages could be recovered in excess of the BIPA's liquidated damages,

d.    whether that injury exceeds the liquidated damages provision in BIPA,

e.    whether that injury was suffered at the hands of any person or business that is in fact "associated with the Symphony Post-Acute Care Network, a/k/a Symphony Post-Acute Network,"

f.    whether that entity acted negligently or willfully with respect to that particular class member,

g.    whether that class member's claim is subject to any affirmative defenses, like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019). As such, many of the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class certification. "Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 832 (same). At most, if damage questions do present significant issues, they can be handled in ancillary proceedings. "It is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members." *Clark*, 343 Ill.

8

App. 3d at 548 (internal quotations omitted). In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58. This is not that case. This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way: Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so? These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest. First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues
Defendants raise do become significant at some future point in time, the Court has the ability
to address such matters then. "If individual damage determinations are necessary, the court
can utilize various procedures to determine damages, including the creation of subclasses."
*Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class
becomes unmanageable at some later time in the litigation, the court always has the option to
set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz
Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this
case as a whole, it alternately finds that issue certification would be appropriate as well. Even
in cases involving the most complex questions of injury or damages – and again, this is not that
case, as it arises under a single simple statute – classes may be certified as to issues, such as
legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this.
*See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to
the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to
limit certification for liability purposes only). Thus, in the alternative, the commonality and
predominance of legal and liability issues in this case demonstrate it is also appropriately suited
for certification as to common legal issues, and to issues concerning liability.

## V. THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately
protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

10

two components:  (1) adequacy of the named Plaintiff; and (2) adequacy of the named

Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). As Defendant posits, "[t]he

purpose of the adequate representation requirement is to ensure that all class members will

receive proper, efficient, and appropriate protection of their interests in the presentation of the

claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate.  Accordingly, the

Court accepts that they will provide proper, efficient, and appropriate protection of the

interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson.  The principal

argument made by Defendants is that the interests of Roberson are antagonistic to those of the

class, as class members may want to seek a monetary award, and that (according to

Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary

recovery.

This is wholly unpersuasive.  Plaintiff, by way of her pleadings, discovery responses,

statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions

that she seeks a monetary recovery in this action, not only on her own behalf, but also on

behalf of the other class members.  Her deposition responses did not contradict that.  In fact,

Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary

awards.

The rest of Defendants' adequacy arguments are much in the same vein.  Quizzing

Plaintiff on what she understands about Defendants' corporate structure, or how the law

interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

11

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class. It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits. But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it. "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI.   FOURTH FACTOR: THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018). The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer. Defendants seem to invest this with independent legal significance. But this was already addressed in the context of Defendants' § 2-615 motion to dismiss. The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms. In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

12

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity"
(740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and
then to apply them to the facts of this case, the Court must decline. This involves disputed
issues of fact, going to the merits of the case, and/or unsettled legal issues. As previously
established, it is not the province of the Court to decide these issues on a motion to certify a
class. Nor will the Court render an advisory opinion. Indeed, issues like this weigh affirmatively
in *favor* of class certification, as they will be common questions to which any affected class
member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly
classified as "corporate liability." Defendants claim each Network location is independently
owned and operated, and argue that only some defendants will be liable as to some class
members, mentioning in passing things such as the statutes regarding limited liabilities.
Defendants make a further argument that they cannot be held liable for anything other than
events occurring in Swansea. Defendants even go so far as to as to argue there are
"constitutional concerns" as to the rights of any non-party entities. Defendants do not provide
any explanation, however, as to how Defendants would have standing to raise any such
concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a
variety of theories assessing mutual liability of the Network. Those theories include topics such
as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.* Plaintiff points
out any assertion by Defendants as to who did or did not operate any given Network location

13

simply begs the questions this lawsuit will answer. Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions. The Court has reviewed all of these materials. The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law. The Court further finds that many of these arguments go to the merits of the case. As such, the Court will not resolve them on a motion for class certification. Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it. Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

## VII.   ORDER AND FINDINGS.

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018). The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

14

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED:**

**DATE:** March 12, 2019.

ICPIHaun

Hon. Kevin T. Hoerner

15

# EXHIBIT B

# PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

Peiffer Wolf Carr Kane Conway & Wise, LLP ("Peiffer Wolf") was founded in 2013. Joseph Peiffer, Peiffer Wolf's managing partner, previously a litigation partner at Fishman Haygood, LLP in New Orleans, founded the firm to take on cases that change people's lives. To this end, Peiffer Wolf handles a wide variety of cases, including a variety of collective, class, and mass actions. Since its inception, Peiffer Wolf has acquired talented attorneys from coast to coast, becoming a national litigation firm.

MAIN OFFICE
1519 Robert C. Blakes Sr. Drive,
New Orleans, LA 70130

ST. LOUIS OFFICE
818 LAFAYETTE AVE., FLOOR 2
St. Louis, MO 63104

ILLINOIS OFFICE
1778 Caprice Court
O'Fallon, IL 62269

CLEVELAND OFFICE
1422 Euclid Avenue, Suite 1610
Cleveland, OH 44115

AUSTIN OFFICE
11801 Domain Blvd., 3rd Floor

LOS ANGELES OFFICE
5042 Wilshire Blvd. #304
Los Angeles, CA 90036

SAN FRANCISCO OFFICE
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111

ROCHESTER OFFICE
1150-J Pittsford-Victor Road, 1st Floor
Pittsford, NY 14534

### ATTORNEY PROFILES

**Joseph Peiffer** is the managing shareholder of Peiffer Wolf. His practices consist of representing individuals and institutions that have been harmed by investment banks and brokerage firms, prosecuting ERISA class actions, and representing victims of labor trafficking and those who have suffered catastrophic injury. He has co-authored a treatise Litigating Business and Commercial Tort Cases, which is published by Thompson West.

Joe has also taught and lectured extensively. He co-created and taught a class entitled Storytelling and Advocacy at Loyola Law School. Also, at Loyola Law School, he has taught a course entitled "The Basics of Arbitration" and he also serves as an adjunct professor teaching Trial Advocacy. He has guest lectured at Tulane Law School in its Securities Regulations class and Syracuse Law School on securities arbitration. He has spoken at many national conventions on a variety of topics including prosecuting large, multi-client claims, broker's deficient advice to retire and FINRA arbitration.

Joe has represented hundreds of individual retirees against their brokers in FINRA arbitration. The highlights of this practice include representing 32 Exxon retirees in a 90-day FINRA arbitration against Securities America that resulted in a $22 million verdict — one of the largest ever awarded by a FINRA arbitration panel. He has also represented hundreds of Xerox and Kodak retirees against their broker resulting from the broker's fraudulent advice to retire and subsequent unsuitable investments. He has represented hundreds of families in cases involving private placements and Ponzi schemes.

His financial services fraud practice also includes representing hospitals and municipalities around the country in cases involving their issuance of auction rate securities. He also serves as co-lead counsel on several ERISA class actions against large financial services firms alleging that they did not prudently invest retirement money and had conflicts of interest. He also is on the plaintiffs' steering committee in a nationwide antitrust class action involving the illegal tying of cable set-top boxes to the provision of premium cable services. Joe also currently represents hundreds of clients in cases involving serious injuries sustained by pharmaceutical products.

Finally, he represents victims of human trafficking and labor exploitation. In one such case, the plaintiffs have alleged that the defendants have failed to pay overtime, improperly deducted for employee housing, and held the plaintiffs passports while in the United States. He has travelled extensively to the Philippines for this case and another one involving a rig explosion where two of his clients working on a rig owned by Black Elk exploded.

Joe was one of three Louisiana lawyers ranked by Chambers USA for securities litigation in 2011. He has been named a 2013 Rising Star by his peers in the Class Action Administration organization. He has been quoted by USA Today, Wall Street Journal, the Associated Press, New York Times, New York Daily News, The Los Angeles Times, Business Week, Investment News, and many other publications. Mr. Peiffer has also appeared on CNN. He was named as one of the fifty Leaders in Law by New Orleans City Business Magazine.

He has also successfully risen into the leadership of several national bar associations. He twice served as the chairman of the Business Torts Section of the American Association for Justice. He currently serves as President of PIABA – a nationwide bar association of lawyers that represent individuals and institutions in arbitrations to recover money lost by investment banks and brokerage firms.

Joe graduated from Tulane School of Law, cum laude, in 1999. While at Tulane, he served on the Tulane Law Review and was involved with the Tulane Legal Assistance Program. Prior to attending Tulane, he graduated from Bowling Green State University in 1996 with a degree in communications.

**Adam Wolf** has developed a national reputation as a leading appellate, complex litigation, and civil rights litigator. He successfully argued a case in the United States Supreme Court, *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009), that defined the scope of the Fourth Amendment regarding strip searches in public schools. The Court's opinion in *Safford* marked the first time in forty years that the Supreme Court ruled in favor of a student who claimed that her school violated her constitutional rights. For his efforts in this case, Mr. Wolf was named Attorney of the Year in California by California Lawyer Magazine.

Mr. Wolf has argued in numerous federal and state courts of appeals, in addition to the United States Supreme Court. He has represented groups and individuals whose constitutional rights have been violated, organizations who seek to vindicate their rights, and governmental entities who were harmed by corporate misconduct.

Mr. Wolf has lectured around the country regarding constitutional law and civil rights. He has been quoted in hundreds of domestic and international newspapers, including the New York Times, Washington Post, Los Angeles Times, USA Today, and Wall Street Journal. Additionally, Mr. Wolf has appeared on numerous television and radio programs, including Good Morning America, CBS Evening News, ABC World News, NBC Nightly News, CNN Headline News, National Public Radio, and the BBC.

Mr. Wolf has been appointed to leadership positions in numerous class actions and mass actions throughout the country.

3

**Daniel Carr** represents a diverse client base in a variety of commercial disputes, complex litigation, and arbitration. Daniel handles numerous state and federal lawsuits for individuals and businesses, and he currently represents investors, and municipalities in FINRA arbitration proceedings. Together with Joe Peiffer, Daniel also serves as co-counsel in several ERISA and antitrust class action lawsuits and represents individuals in litigation involving pharmaceutical products, labor exploitation, fraudulent investments, and wrongful death.

Daniel is a member of several nationwide bar associations, including PIABA (Public Investors Arbitration Bar Association), and he previously served on the board of directors of the Business Torts Section of the American Association for Justice.

Daniel received his law degree from Tulane School of Law, summa cum laude, in 2006. While at Tulane, he was elected Senior Articles Editor for the Tulane Law Review, and he worked as a fellow in the Legal Analysis Program. Following law school, Daniel was privileged to serve as a law clerk to Judge Jacques L. Wiener, Jr., on the United States Court of Appeals for the Fifth Circuit.

**Jason Kane** is a securities attorney practicing out of the firm's Upstate New York office. He has extensive experience representing investors in Financial Industry Regulatory Authority arbitrations and New York State Courts.

Jason graduated from the State University of New York at Geneseo in 2004 having earned his B.A. in Economics. Thereafter, Jason attended the Syracuse University College of Law, and received his Juris Doctorate, Cum Laude, in 2007.

While attending the Syracuse University College of Law, Jason served as a form and accuracy editor for the Syracuse Journal of International Law and Commerce. He also gained valuable experience as a student law clerk for Magistrate Judge George H. Lowe and served as a volunteer at the United States Attorney's Office in the Northern District of New York where he assisted the Assistant United States Attorneys prosecute their cases.

Jason has represented hundreds of investors in Upstate New York and around the country in some of the highest profile securities cases originating out of Upstate New York. He has recovered millions of dollars in FINRA arbitration and mediation while representing individuals against their former brokers and brokerage firms. He often assists his victimized clients through the regulatory investigations that result from the large scale scams perpetrated by their unscrupulous brokers.

**Brandon Wise** joined the firm after managing his own boutique practice that focused on class, collective, and employment matters. Brandon has successfully litigated collective and class action cases in across the country in state and federal courts.

4

Brandon has led Peiffer Wolf's BIPA practice since its inception, and to date, has been lead counsel on more than 250 BIPA filings. Brandon's BIPA settlements include:

*Alonzo Hayes v. Saddle Creek Corporation*, Cas No. 3:19-cv-1143-SMY, appointed lead counsel in class action that resolved for $390,000;

*Andrew Ellis v. Terminal Operations Management, Inc.*, Case No. 2019-CH0-9407, appointed lead counsel in class action that resolved for $409,000;

*Belva Joyce Hill v. Valli Produce of Evancston, Inc.*, Case No. 2019-CH-13196, appointed lead counsel in class action that resolved for $815,000;

*Ben Redmond v. Keystone Environment Resources, Inc.*, Case No. 2019-CH-11150, appointed lead counsel in class action that resolved for $79,500;

*Bret Bray and Jason Houseman v. Hixson Lumber*, Case No. 2019-L-9, appointed lead counsel in class action that resolved for $84,700;

*Cassandra Boyle v. Harbor Freight*, Case No. 3:19-cv-00498-SMY-GCS, appointed lead counsel in class action that resolved for $595,000;

*Charles Hall v. Pepsi MidAmerica Co.*, Case No. 2018-L-20, appointed lead counsel in class action that resolved for $114,000;

*Christopher Dixon v. Grunt Style, LLC*, Case No. 2019-CH-01981, appointed lead counsel in class action that resolved for $450,000;

*Crystal Lee v. Neimann Foods*, Case No. 2019-L-00152, appointed lead counsel in class action that resolved for $4,200,000;

*Connie Young v. Worldwide Technology*, appointed lead counsel in class action that resolved for over $2,000,000;

*Charles Hall v. Pepsi Mid America Co.*, Case No. 2018-L-20, appointed lead counsel in class action that resolved for $115,000;

*David Kirby v. Gurtler Chemicals, Inc.*, Case No. 2019-CH-09395, appointed lead counsel in class action that resolved for $69,000;

*Emily Reid Farris v. Tutera Group Inc., et al*, Case No. 2019-CH-42, appointed lead counsel in class action that resolved for $289,800;

5

*Gary Bird v. Three Z Printing Co*, Case No. 2020-L-12, appointed lead counsel in class action that resolved for over $700,000;

*Glen Ralph v. Get Fresh*, Case No. 2019-CH-02324, appointed lead counsel in class action that resolved for $675,000;

*Isaac Brown v. Trilogy Warehouse*, Case No. 2019-L-0212, appointed lead counsel in class action that resolved for $65,000;

*Israel James v. Mado Healthcare*, Case No. 2019-CH-06140, appointed lead counsel in class action that resolved for $500,000;

*Jason Morris v. Imperial Towers Condominium Assn.*, appointed lead counsel in class action that resolved for $120,000 (for a class of 60, making this one of the largest per class member BIPA recoveries);

*Jhamala Thomas v. Kik Custom Products Inc.*, Case No. 2019-CH-02471, appointed lead counsel in class action that resolved for $957,600;

*John Charles, et al v. Scheels All Sports Inc.*, Case No. 2020-L-0180, appointed lead counsel in class action that resolved for $625,000;

*Joseph Trottier v. Summit Staffing, Inc.*, Case No. 2019-CH-02731, appointed lead counsel in class action that resolved for $940,000;

*Kevin Truss v. Four Seasons Heating and Air Conditioning*, Case No. 2019-CH-09633, appointed lead counsel in class action that resolved for over $700,000;

*Luanne Moleterno v. Touchpoint Logistics*, Case No. 2020-L-000364, appointed lead counsel in class action that resolved for $48,000;

*Lucas Boyd v. RREM Inc.*, Case No. 2019-CH-02321, appointed lead counsel in class action that resolved for $196,000;

*Michael Day v. Southern Illinois Hardware, LLC*, Case No. 3:20-cv-00008-SMY-MAB, appointed lead counsel in class action that resolved for $196,000;

*Nicole Smith v. D&W Fine Pack, LLC*, Case No. 2021-L-00182, appointed lead counsel in class action that resolved for over $1,000,000;

*Richard Graf v. Orbit Machining Company*, Case No. 2020-CH-03280, appointed lead

counsel in class action that resolved for $59,400;

*Robert Maricle v AgReliant Genetics,* Case No. 2019-L-000481, appointed lead counsel in class action that resolved for $330,000;

*Shannon Delgado v. America's Auto Auction,* Case No. 2019-CH-04164, appointed lead counsel in class action that resolved for $796,000;

*Tanya and Robert Pelka v. Saren Restaurants, Inc.,* Case No. 2019-CH-14664, appointed lead counsel in class action that resolved for $475,000;

*Ted Harry v. Provider Plus, Inc.,* Case No. 2017-L-0710; appointed lead counsel in class action that resolved for $71,825;

*Timothy Cravens v. Dematic Corp,* Case No. 1:20-cv-01190-JBM-JEH, appointed lead counsel in class action that resolved for over $1,000,000;

*Thome v. NovaTime Technology, Inc.* 1:19-cv-06256, appointed co-lead counsel in class action that was resolved for $14,100,000.00;

*Yeske et al v. Macoupin Energy LLC et al,* Case No. 2017-L-24, appointed lead counsel in class action that resolved for $750,000;

*Yvonne Wilhite v. Sun Basket, Inc.,* Case No. 20-L-0045, appointed lead counsel in class action that resolved for $250,000

Brandon has served as class or collective counsel in the following resolved collective and class matters:

*Volz, et al. v. Provider Plus, Inc., et al.,* a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert within hours of its submission to the court.

*Carver, et al. v. Foresight Energy LP, et al.,* WARN Act litigation brought on behalf of a class of former coal miners. Mr. Wise secured the first reported decision, a significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016 WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was denied, the parties reached a class-wide settlement of $550,000 for a class of 75 employees.

7

*Volz v. Tricorp management Company, et al.,* a FLSA collective in class action where Mr. Wise was appointed Class Counsel. The parties reached a $350,000 settlement for bartenders, servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the Midwest.

REPRESENTATIVE CASES

Peiffer Wolf attorneys were appointed class counsel or serve as counsel in numerous class and collective actions, including:

*Whitley, et al. v. J.P. Morgan Chase & Co., et al.,* a class action lawsuit on behalf of retirement investors against J.P. Morgan Chase & Co. and various other J.P. Morgan entities over the sale and administration of the JP Morgan Stable Value Fund. Received preliminary approval for a class wide settlement of $75 million.

*Volz, et al. v. Provider Plus, Inc., et al.,* a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert.

*Nevarez v. Forty Niners Football Company,* a certified class action, on behalf of nearly 5,000 class members with mobility disabilities who were denied equal access to Levi's Stadium in violation of the Americans with Disabilities Act.

*Baricuarto, et al. v. Industrial Personnell and Management Services, Inc. et al.,* a human trafficking case that required extensive travel and litigation in the Philippines, and resulted in a multi-million dollar settlement.

*In re Pacific Fertility Center Litigation,* a putative class action on behalf of nearly 1,000 people whose embryos were compromised in a freezer tank at a fertility center.

*Amador v. California Culinary Academy,* representing a certified class of former students of for-profit school California Culinary Academy regarding class members' student loans.

*Bilewicz v. FMR LLC,* a case brought on behalf of current and former employees of Fidelity Investments, alleging that Fidelity violated ERISA by offering exclusively high-fee Fidelity mutual fund products in its retirement plan and by repeatedly adding funds to the plan with little or no track record. Plaintiffs further alleged that the Fidelity plan's fees are very high for a multi- billion-dollar plan, and Fidelity has failed to follow sound fiduciary practices for multi-billion dollar plans. This case was successfully settled, and Peiffer Wolf was approved as co-class counsel in that action.

*Carver, et al. v. Foresight Energy LP, et al.,* WARN Act litigation brought on behalf of a class of former coal miners. Peiffer Wolf secured the first reported decision, a

significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016
WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was
denied, the parties reached a proposed class-wide settlement of $550,000 for a class of 75
employees.

*Volz v. Tricorp management Company, et al.*, a FLSA collective in class action where
PRW Legal attorney was appointed class counsel. Settled for $350,000, for bartenders,
servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the
Midwest.

*Hanson v. Berthel Fisher & Company Financial Services, Inc., et al.*, a securities class
action filed on behalf of investors in a real estate investment program that raised
approximately $26 million from the investing public. Claims were predicated upon the role
played by Berthel Fisher, the managing broker-dealer of the program that allegedly organized
and oversaw the securities offering by the Program while aware of misrepresentations and
omissions in the Program's offering documents.

*Booth et al. v. Strategic Realty Trust, Inc., et al.*, a securities class action where
plaintiffs contended that throughout the offering period, the Strategic Realty Trust
offering materials contained materially inaccurate and incomplete statements about the
company's investment strategy, internal controls, and governance mechanisms.
Plaintiffs alleged that their investments lost value as a result of defendants' acts and
omissions.

*Thieriot v. Celtic Ins. Co.*, a certified class action where settlement was approved on
behalf of a class of people who were overcharged by a health insurer in violation of state
law.

Peiffer Wolf currently serves as counsel for plaintiffs in numerous other class and
mass actions, including:

*In re: FedLoan Student Loan Servicing Litigation*, 2:18-md-02883 (E.D. Penn.)
consolidated multi-district litigation involving one of the nation's largest student loan
servicers. Attorney Brandon Wise was appointed to the Plaintiffs' Executive Committee.

*In re: Dicamba Herbicides Litigation*, 1:18-md-02820-SNLJ (E.D. Mo), consolidated
multi-district litigation involving the alleged unlawful release of a genetically modified
seed and herbicide system.

*Albers, et al. v. Delloite & Touche LLP, et al.*, a mass securities action where Peiffer
Wolf represents over 100 investors with claims exceeding $100 million in action alleging
violations of state securities laws.

9

*Yao-Yi Liu et al. v. Wilmington Trust Company*, a class action lawsuit on behalf of investors of a fraudulent scheme against Wilmington Trust alleging that Wilmington Trust breached its duties as an escrow agent and aided the perpetrators of the scheme.

*In re Platinum and Palladium Antitrust Litigation*, a case involving claims against BASF Metals, Goldman Sachs, HSBC, and Standard Bank. Plaintiffs allege that Defendants were involved in an unlawful price-setting process of platinum and palladium in violation of the Sherman Act.

*Fouts v. Bank of Nova Scotia, New York Agency et al.*, a class action filed on behalf of holders of debt with interest rates linked to the US Treasuries auction rates, alleging violations of the federal antitrust and commodities laws arising from manipulation of the prices of Treasury securities and related financial instruments through collusion by the primary dealers of U.S. Treasury Department securities.

*In re Fidelity ERISA Float Litigation*, a case involving claims brought by participants in various ERISA plans administered by Fidelity, on behalf of those plans, alleging that Fidelity violated ERISA by improperly using "float" income received as interest on plan assets to pay itself fees and failing to crediting the amount of that float income to the plans or their participants.

*American Chemicals & Equipment Inc. 401(K) Retirement Plan v. Principal Management Corporation, et al.*, a case involving claims brought by ACE 401(k) Plan, on behalf of the shareholders of six mutual funds, against the investment advisors for those funds. Plaintiff alleges that the defendants breached their statutory fiduciary duty under Section 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), by charging unfair and excessive fees for their advisory services and retaining excess profits derived from economies of scale.

*Jennifer Roth v. Life Time Fitness, Inc.*, a class action lawsuit filed on behalf of fitness instructors seeking unpaid wages for work that was required by Defendants. Plaintiff alleges that fitness instructors were not compensated for the work they performed before and after fitness classes.

*Carol Prock v. Thompson National Properties, LLC, et al.*, a securities class action filed on behalf of investors in the TNP 6700 Santa Monica Boulevard, a real estate investment program that raised approximately $17 million from the investing public. Claims are predicated upon alleged material misrepresentations and omissions in the program's offering documents by its sponsor and officers and directors of the sponsor.

*In re Dental Supplies Antitrust Litigation*, a class action lawsuit filed on behalf of dental practices, orthodontic practices, and dental laboratories alleging that the country's three largest distributors of dental supplies and equipment agreed not to compete on price and caused injury to plaintiffs in the form of artificially inflated prices.

10

*Matthew Fero et al. v. Excellus Health Plan Inc.,* a class action lawsuit filed on behalf of plaintiffs whose personal information was compromised as a result of a data breach that is alleged to have gone undetected for a 600-day period.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| **AMY NEWTON,** <br> **individually and on behalf of all others** <br> **similarly situated,** | Case No. 3:22-cv-2442 |
| Plaintiff, | Removed from the State of Illinois, <br> Circuit Court of St. Clair County, |
| v. | Case No. 22 LA 0783 |
| **MISSION CARE OF ILLINOIS, LLC,** | |
| Defendant. | |

<u>**DECLARATION OF JENNIFER BUCKNER**</u>

COMES NOW Jennifer Buckner, and, pursuant to 28 U.S.C. § 1746, declares as follows:

1.    I am a citizen of the United States, over 18 years of age, and competent to testify as to the matters contained in this Declaration.

2.    I have personal knowledge of the facts set forth in this Declaration, or I have knowledge of such facts based upon corporate records which I have reviewed. Such corporate records are maintained in the regular course of business.

3.    I am employed by Abbott Ambulance, Inc. ("Abbot") as a Human Resources Manager. I have been employed by Abbott since 2000, and in the role of Human Resources Manager since 2012.  In my role, I provide human resources services to Abbott's affiliate, Mission Care of Illinois, LLC ("Mission Care"). As such, I am familiar with Mission Care's structure, employees, personnel records, and timekeeping practices.

4.    Mission Care is a limited liability company whose sole member is Mission Care Services LLC. Mission Care Services LLC's sole member is American Medical Response, Inc., a corporation incorporated in Delaware and with its principal place of business in Greenwood Village, Colorado.

5.      Mission Care's records reflect that Plaintiff Amy Newton ("Newton") is a citizen of Illinois. Newton was employed by Mission Care from approximately November 2020 to August 2021.

6.      Mission Care's records reflect that approximately 475 employees may have used the timeclock system that scans a portion of the employee's fingertip since September 8, 2017.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of October 2022.


*Jennifer Buckner*
_____
Jennifer Buckner

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| **AMY NEWTON,**<br>**individually and on behalf of all others**<br>**similarly situated,** | Case No. 3:22-cv-2442 |
| Plaintiff, | Removed from the State of Illinois, |
| | Circuit Court of St. Clair County, |
| v. | Case No. 22 LA 0783 |
| **MISSION CARE OF ILLINOIS, LLC,** | |
| Defendant. | |

<u>**NOTICE TO ADVERSE PARTY OF FILING OF NOTICE OF REMOVAL**</u>

To:    Brandon Wise
       Paul Lesko
       Adam Florek
       Peiffer Wolf Carr Kane Conway & Wise LLP
       818 Lafayette Avenue, Floor 2
       St. Louis, Missouri 63104

PLEASE TAKE NOTICE that on October 20, 2022, Defendant Mission Care of Illinois, LLC, by and through its attorneys, Littler Mendelson, P.C., filed its Notice of Removal with the Clerk of the United States District Court for the Southern District of Illinois, East St. Louis Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, of this action now pending in the Circuit Court of St. Clair County, Case No. 22 LA 0783. A copy of that Complaint was filed with the Notice of Removal. Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of the Notice of Removal is attached to this Notice and hereby served upon you.

Dated: October 20, 2022                              Respectfully Submitted,


                                                    */s/ Orly Henry*

Orly Henry
*ohenry@littler.com*
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
312-372-5520

Jennifer Chierek Znosko
*jznosko@littler.com*
LITTLER MENDELSON, P.C.
600 Washington Avenue, Suite 900
St. Louis, Missouri 63101
314-659-2000

*Attorneys for Defendant Mission Care of Illinois, LLC*

## **CERTIFICATE OF SERVICE**

I, Orly Henry, an attorney, certify that I caused a copy of the foregoing document to be served upon the below attorneys of record via email on October 20, 2022:

Brandon Wise
*bwise@peifferwolf.com*
Paul Lesko
*plesko@peifferwolf.com*
Adam Florek
*aflorek@peifferwolf.com*
Peiffer Wolf Carr Kane Conway & Wise LLP
818 Lafayette Avenue, Floor 2
St. Louis, Missouri 63104

*/s/ Orly Henry*
One of Defendant's Attorneys

# EXHIBIT 4

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT COUNTY OF ST. CLAIR, STATE OF ILLINOIS**

| | |
|---|---|
| **AMY NEWTON,** **individually and on behalf of all others similarly situated,** | |
| Plaintiff, | Case No. 22 LA 0783 |
| v. | |
| **MISSION CARE OF ILLINOIS, LLC,** | |
| Defendant. | |

## **DEFENDANT'S NOTICE TO STATE COURT OF FILING OF NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that on October 20, 2022, Defendant Mission Care of Illinois, LLC, by and through its attorneys, Littler Mendelson, P.C., filed a Notice of Removal with the Clerk of the United States District Court for the Southern District of Illinois, East St. Louis Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  A true and correct copy of the Notice of Removal is attached as Exhibit A.

PLEASE TAKE FURTHER NOTICE that the filing of said Notice of Removal in Federal Court, together with the filing of a copy of said Notice with this Court, effects the removal of this Action in accordance with 28 U.S.C. § 1446(d).

Dated:  October 20, 2022                                     Respectfully Submitted,


                                                                     */s/ Orly Henry*_____

Orly Henry
*ohenry@littler.com*
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
312-372-5520

Jennifer Chierek Znosko
*jznosko@littler.com*
LITTLER MENDELSON, P.C.
600 Washington Avenue, Suite 900
St. Louis, Missouri 63101
314-659-2000

*Attorneys for Defendant Mission Care of Illinois, LLC*

## **CERTIFICATE OF SERVICE**

I, Orly Henry, an attorney, certify that I caused a copy of the foregoing document to be

served upon the below attorneys of record via email on October 20, 2022:


Brandon Wise
*bwise@peifferwolf.com*
Paul Lesko
*plesko@peifferwolf.com*
Adam Florek
*aflorek@peifferwolf.com*
Peiffer Wolf Carr Kane Conway & Wise LLP
818 Lafayette Avenue, Floor 2
St. Louis, Missouri 63104


*/s/ Orly Henry*
One of Defendant's Attorneys